947 So.2d 525 (2006)
Jason Robert McALEVY, Petitioner,
v.
STATE of Florida, Respondent.
Nos. 4D06-2965, 4D06-4337.
District Court of Appeal of Florida, Fourth District.
December 20, 2006.
*526 Carey Haughwout, Public Defender, Daniel Cohen and Joshua LeRoy, Assistant *527 Public Defenders, West Palm Beach, for petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Thomas A. Palmer, Assistant Attorney General, West Palm Beach, for respondent.
PER CURIAM.
On our own motion, we have consolidated the above-captioned cases for purposes of this opinion.
The circuit court, via a single judge, denied petitioner certiorari relief from the county court's order granting the state's motion to issue a subpoena to obtain petitioner's medical records. Petitioner then sought certiorari review in this court (Case No. 4D06-2965). Agreeing with petitioner's claim that a three-judge panel must pass on petitions for certiorari pursuant to administrative order in the Fifteenth Judicial Circuit, by order dated September 19, 2006, we granted the petition, quashed the circuit court order and remanded for further proceedings. We directed that, on remand, the petition for writ of certiorari be heard by a three-judge panel in accordance with the relevant administrative order, and advised that an opinion would follow.
Before the opinion issued, the circuit court, by order of a three-judge panel, denied petitioner relief per curiam. The circuit court again rejected petitioner's claim that the trial court departed from the essential requirements of law in concluding it did not have to hear evidence in the form of witness testimony to determine whether the state had shown the requisite nexus between the medical records sought and the pending criminal investigation. Petitioner then filed a second petition for writ of certiorari in this court, case number 06-4337, which we consolidated with case number 06-2965. We now deny the second petition, and write to address the issues raised in both petitions.
On second-tier review, this court determines only whether the circuit court afforded procedural due process and applied the correct law. Premier Developers III Assocs. v. City of Fort Lauderdale, 920 So.2d 852, 852-53 (Fla. 4th DCA 2006); City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla.1982).
In his first request for certiorari relief, petitioner argued that procedural due process requires a three-judge panel to pass on petitions for certiorari pursuant to administrative order in the Fifteenth Judicial Circuit. We agree.
Initially, we reject the state's argument that the issue was not preserved for appellate review. The only opportunity for petitioner to have raised this claim below would have been in a motion for rehearing, as petitioner would have no reason to know prior to the issuance of the one-judge affirmance, that the administrative order requiring three judges had not been complied with. At least one district court has determined that the failure to seek rehearing does not preclude certiorari review of an alleged procedural error. See Dep't of Highway Safety & Motor Vehicles v. Snell, 832 So.2d 177 (Fla. 5th DCA 2002).
Moving on to the merits, petitioner acknowledges there is no constitutional, statutory or rule-based provision designating the number of judges required when a circuit court acts in its appellate capacity. Compare Art. V, § 4(a), Fla. Const.; § 35.13, Fla. Stat. (2006); and Fla. R. Jud. Admin. 2.210(a)(1) (recently renumbered from 2.040(a)(1)) (in the district courts of appeal, three judges shall consider each case). As such, no statewide criteria exist, and the local rules on the issue differ from circuit to circuit. See Fla. Power & Light *528 Co. v. City of Dania, 761 So.2d 1089, 1094 (Fla.2000). In the Fifteenth Judicial Circuit, however, there is an express administrative rule that requires a three-judge panel to review "all petitions for extraordinary writs . . . which in essence seek review of action by a lower tribunal." See 15th Jud. Cir. Admin. Order No. 8.001-11/99(1). In light of this express local rule, we find that petitioner's due process rights were violated when a single judge passed upon his original certiorari petition.
We therefore distinguish this case from those such as Rader v. Allstate Insurance Co., 789 So.2d 1045 (Fla. 4th DCA 2001), which arose from the Seventeenth Judicial Circuit, in which the local rules permit an appeal to a single judge. In Rader, we found that the assignment of an appeal from a county court case to a single circuit court judge did not constitute a violation of procedural due process. See also Loftis v. State, 682 So.2d 632 (Fla. 5th DCA 1996) (finding no error in absence of local rule in ninth judicial circuit requiring that a three-judge panel hear a petition for an extraordinary writ).
The next issue raised requires a brief statement of facts to place it in its proper perspective.
Petitioner was charged with three misdemeanors: battery, resisting an officer without violence and driving under the influence (DUI). The state filed a motion asking for leave of court to issue a subpoena duces tecum of certain medical records. The state summarized the facts as follows:
On or about March 26, 2006, at 10:30 pm at Lake Worth Road and Florida Turnpike in Palm Beach County, D/S Crp. Vargas # 7018 PBSCO (herein referred to as `A/O') responded to a complaint about a possible DUI. A/O observed that defendant had an odor of unknown alcoholic beverage on his breath, bloodshot glassy eyes, slurred speech, and slow response time. A/O observed defendant stumble when exiting the vehicle, and then dropping to his knees. A/O then assisted defendant to his feet but defendant kept stumbling. After A/O placed defendant under arrest, defendant attempted to run into traffic screaming `I want to die!' After A/O and back-up officers subdued the defendant, he once again began screaming `I want to die, I don't want to go to jail,' and he began to strike the officers. Because the A/O spotted what could have been blood transfer from defendant to a back-up officer, the A/O called for Fire Rescue medics. But defendant once again broke free and ran away. The fire rescue medics treated both the defendant and a back-up officer, D/S Govantes PBSCO, and found that there was blood transfer from the defendant to D/S Govantes, and directed both to be transported to the West Palms Hospital for tests. At that time, the defendant became so combative that the medics had to sedate him to get him to the hospital. Registered nurse, Susan Dash, tested the defendant's blood for blood alcohol content and the results have not yet been disclosed to the Palm Beach County State Sheriff's Office.
Based on these facts, the state sought to obtain: (1) the results of the blood alcohol test performed at the West Palms Hospital Emergency Room; and (2) the records of the Palm Beach County Fire Rescue medics who administered the sedative to defendant. The state argued that these records were relevant to its ongoing criminal investigation of the DUI, as the records have a "`logical tendency to prove or disprove a fact which is of consequence to the outcome of the action,' namely, whether the defendant's blood alcohol test results were at least .08 or whether the defendant's normal faculties were impaired."
*529 In granting the state's motion, the county court concluded it need not hear evidence in the form of witness testimony. Rather, it could consider the state's motion (i.e., argument) and the probable cause affidavit in determining whether the state had shown the requisite nexus between the medical records and the pending criminal investigation. Because we find no departure from the essential requirements of law, we deny the latest request for certiorari relief.
Patient medical records are protected under Florida's right to privacy as well as statute. Art. I, § 23, Fla. Const.; Hunter v. State, 639 So.2d 72 (Fla. 5th DCA), rev. denied, 649 So.2d 233 (Fla.1994). The supreme court has said that where a privacy right attaches, the state may justify encroachment of that right if it demonstrates a compelling state interest and that the state has used the least intrusive means to accomplish its goal. Shaktman v. State, 553 So.2d 148 (Fla.1989). A compelling state interest exists upon a showing that the materials contain information relevant to an ongoing criminal investigation. State v. Rivers, 787 So.2d 952, 953 (Fla. 2d DCA 2001).
Section 395.3025, Florida Statutes, outlines the procedure for obtaining a person's medical records under subpoena, stating:
Patient records are confidential and must not be disclosed without the consent of the person to whom they pertain, but appropriate disclosure may be made without such consent . . . In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice by the party seeking such records to the patient or his or her legal representative.
§ 395.3025(4)(d), Fla. Stat. (2006). If the patient objects, a hearing must be held to determine if the records are relevant to a criminal investigation. Cerroni v. State, 823 So.2d 150, 152 (Fla. 5th DCA 2002).
Petitioner is correct that, when a patient whose records are being sought properly raises an objection, the state must present evidence and argument to show the nexus between the medical records sought and a pending criminal investigation. See, e.g., Hunter v. State, 639 So.2d 72 (Fla. 5th DCA 1994). Yet, we disagree with petitioner's assertion that the state must present live witness testimony or nonhearsay evidence.
The Hunter case, upon which petitioner primarily relies, states in part that:
We issue this opinion only to emphasize that the state has the obligation and the burden to present evidence to the trial judge to demonstrate that a patient's confidential hospital records are relevant to a criminal investigation before the issuance of an investigative subpoena.
639 So.2d at 72 (emphasis supplied). The fifth district did not specify what type of evidence must be presented, but found that "the accident report, coupled with the fact that the other driver died as a result of this two car accident, makes the relevancy of these documents obvious." Id. at 73. The Hunter court emphasized that relevancy to the pending investigation is the key, stating:
the state could seek to subpoena all the medical records of a patient from all of the patient's health care providers without there being a scintilla of evidence to suggest that any of the medical records are relevant to a pending criminal investigation. Some of the records might be relevant and some might not be relevant. Without the intervention of an impartial magistrate to determine relevancy, the notice of hearing to the patient is meaningless . . . The court must *530 act as a shield to protect the patient's right to privacy by determining whether medical records are relevant to a pending criminal investigation.
639 So.2d at 74.
In Ussery v. State, 654 So.2d 561 (Fla. 4th DCA 1995), this court agreed with Hunter, but did not expressly state that evidence must be presented. Rather, we concluded that all requirements are met to allow the state to issue a subpoena when notice is provided and the state "carries its burden of showing the relevance of the records to its criminal investigation." Id. Similarly, in State v. Rivers, 787 So.2d 952 (Fla. 2d DCA 2001), the second district cited Hunter, but did not discuss whether evidence must be presented. The court simply found that the state had met its burden of establishing relevancy and a compelling state interest because "the emergency room medical records and toxicology reports sought by the state were directly related to the incident which led to the [DUI] charges against Rivers and to the ongoing investigation." 787 So.2d at 953-54 (emphasis supplied). These cases emphasize not the type of evidence that must be presented, but that the state has somehow demonstrated the relevancy of the records to the pending investigation.
The concept of relevancy is broader in the discovery context than in the trial context. Amente v. Newman, 653 So.2d 1030, 1032 (Fla.1995); cf. State v. Sandini, 395 So.2d 1178 (Fla. 4th DCA 1981) (hearsay information, though inadmissible as evidence in a trial, may constitutionally form basis of an affidavit for a search warrant). In Hunter, the subpoena was issued based upon a showing of relevancy, consisting only of "the accident report, coupled with the fact that the other driver dies as a result of this two car accident." 639 So.2d at 72-73. With respect to relevancy, the Hunter court explained:
We do not rule that a finding of relevancy is equivalent to a finding of probable cause. We do not suggest, nor is there a need for, a new rule to determine relevancy. Relevancy and relevant evidence have been determined by Florida courts to be `evidence tending to prove or disprove a material fact.'
Id. at 74 (citations omitted); see also Cerroni, 823 So.2d at 152. To obtain a search warrant on the other hand, the state has a higher burden of proof. See Farrall v. State, 902 So.2d 820, 821 (Fla. 4th DCA 2004) (holding that, to obtain a search warrant, the state must show probable cause that the records are relevant to the commission of a crime).
In this case, however, the state sought petitioner's medical records by way of a subpoena. In determining whether the state had shown a nexus between the medical records and the pending criminal investigation, the county court concluded it could rely upon the state's argument and the probable cause affidavit (akin to an accident report, as in Hunter). The court further concluded it did not have to hear evidence in the form of witness testimony to make its determination. Based upon the foregoing authorities petitioner fails to demonstrate that the circuit court's denial of relief constituted a departure from the essential requirements of law. We therefore deny the latest writ and approve the circuit court's ruling.
POLEN, TAYLOR and HAZOURI, JJ., concur.